IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re Subpoenas Issued to Danze, Inc., Globe Union America Corporation, and Globe Union Industrial Corporation | No. 05 C 4538 <br><br> Judge Plunkett, Senior Judge <br><br> Magistrate Judge Schenkier |
| U.S. FAUCETS, INC. and JAS CORP., <br><br> Plaintiffs, <br><br> v. <br><br> HOME DEPOT USA, INC.; HOME EXPO; GLOBAL UNION; PEGASUS, et al., <br><br> Defendants. | Underlying Action <br><br> Northern District of Georgia <br><br> No. 1:03-CV-1572-WSD <br><br> Judge William S. Duffey, Jr. |

## MEMORANDUM OPINION AND ORDER

Petitioners Danze, Inc. ("Danze") and Globe Union Industrial Corporation ("GUIC") (collectively "Petitioners") bring this action for attorneys' fees pursuant to Federal Rules of Civil Procedure 16 and 45 and 28 U.S.C. § 1927. This Court has already determined that Petitioners are entitled to recover attorneys' fees for work commenced after August 25, 2005. The sole issue is the amount of fees to be awarded. Petitioners now seek to recover $56,183.75 in attorneys' fees under the fee-shifting statute. For the reasons set forth below, Petitioners' motion for attorneys' fees is granted in the amount of $27,500.

## Background

This matter arises out of an underlying action currently pending in the Northern District of Georgia. (Pet'rs Mem. at 4.) The Plaintiffs in that action, U.S. Faucets, Inc. ("USF") and JAS Corporation ("JAS") (collectively "Plaintiffs"), filed a fourteen point complaint against Home Depot USA, Inc. ("Home Depot") and Globe Union America Corporation ("GUA"). *Id.* On April 26, 2005, all fourteen claims against GUA were dismissed with prejudice. *Id.* Around that time, GUA changed its name to Danze, Inc. *Id.* at 2. Nonetheless, Plaintiffs thereafter issued subpoenas to two non-parties, Petitioners Danze and GUIC. *Id.* at 3. On August 25, 2005, Judge Duffey issued an order in the underlying action, which barred depositions of Danze and GUIC and denied Plaintiffs' document requests from these two non-parties. *Id.* at 2.

At a September 8, 2005 hearing, Plaintiffs' counsel argued to this Court that Judge Duffey's order did not address the document demands. *Id.* We did not rule on the question, preferring instead to give Judge Duffey an opportunity to decide the scope of his discovery order. Judge Duffey found that his order did not permit Plaintiffs to subpoena any of the documents. Consequently, on November 9, 2005 this Court denied Plaintiffs' motion to require Petitioners to produce the requested documents and granted Petitioners' petition for sanctions for issuing the improper subpoenas. *Id.* at 4. We held that Petitioners could be reimbursed for fees reasonably incurred after Judge Duffey's August 25, 2005 order, in part because Plaintiffs, if unsure, should have sought a clarification from Judge Duffey before proceeding here.

## Discussion

The sole issue in this matter is the amount of attorneys' fees Petitioners are entitled to recover. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After this calculation, other considerations, such as the success of a petitioner's attorney and the reasonableness of the hours expended in obtaining this result, "may lead the district court to adjust the fee upward or downward." *Id.* at 434. "Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

First, we must calculate a reasonable hourly rate for Petitioners' two attorneys, Timothy Klenk and Christian Poland. This calculation is to be based upon the "market rate" for the serviced provided. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). "[M]arket rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* at 555 (quoting *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995)). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)).

Petitioners seek reimbursement at the rates of $495 per hour for Klenk and $350 per hour for Poland. (Pet'rs Mem. at 6.) The initial burden is on the Petitioners to demonstrate that these rates are the market rates for the attorneys' time. *Spegon*, 175 F.3d at 556. An attorney's self-serving affidavit will not satisfy this requirement. *Id.* These requested rates are the same rates at which the attorneys billed the Petitioners for the work at issue. (Pet'rs Mem. at 6.) In addition to Klenk and

Poland's declarations attesting to their respective rates, they have attached a declaration from Richard Rappaport, a former colleague of both Klenk and Poland. *(Id.,* Ex. 3 ¶¶ 1, 8-9.) Rappaport states that he participates in establishing the fee rates for attorneys at a similarly sized Chicago law firm and that the rates proffered by Klenk and Poland are "similar to the rates charged by lawyers with similar experience in my firm and . . . are reasonable for lawyers from the Chicago offices of similar sized firms." *(Id.* ¶¶ 4-7.)

Additionally, Petitioners include a 2004 National Law Journal Billing Survey of various large law firms across the country. *(Id.,* Ex. 1.) However, this survey is not helpful, because it contains billing rate data for just five Chicago law firms and lists only the single highest and lowest hourly billing rates charged by any partner at each firm. Consequently, it provides a range of billing rates but no means of discerning how experience and the area of practice figure into the calculation of billing rates within that range. Similarly, Petitioners include an August 16, 2005 article from the Chicago Daily Law Bulletin. *Id.* The article states that 17.8 percent of Chicago law partners have billing rates between $235 and $354 per hour, 21.5 percent between $415 and $474 per hour, 16.9 percent between $475 and $534 per hour, and 27.2 percent who charge $535 or more per hour. *Id.* Again, while these statistics provide a macroscopic vantage of hourly billing rates for Chicago law partners, they do not provide any means of determining in which range Klenk and Poland's rates should be placed.

After careful review, this Court finds that Poland's $350 hourly rate is reasonable and will be used to calculate Petitioners' award of attorneys' fees. The Court bases this decision on several factors. Poland has thirteen years of legal experience, the last five of which have been as a partner. His hourly rate, according to the Chicago Daily Law Bulletin article, is in the lower half of all

Chicago law partners. Finally, this case involves commercial litigation, one of his three listed practice areas on his firm's website.[1] Combining all these factors, $350 per hour reflects a reasonable hourly rate in Chicago for a commercial litigation case by an attorney with thirteen years experience.

In contrast, this Court finds that Klenk's requested rate of $495 per hour is too high. Klenk has 38 years of experience practicing law and his requested hourly rate falls within the second highest range according to the Chicago Daily Law Bulletin article. In addition, his firm's website lists his sole area of practice as "Labor and Employment" law.[2] However, this case involves neither labor nor employment law. Balancing all these factors, this Court determines that a reasonable hourly rate for Klenk's work is $425 per hour, which is less than a fifteen percent reduction of the requested hourly rate. The calculation reflects Klenk's many years of experience but also considers Petitioners' inability to demonstrate concrete examples of the hourly rates of similarly experienced attorneys performing similar work.

Second, we must determine how many hours Petitioners' attorneys reasonably expended during the relevant period. Fee applicants are expected to use "billing judgment" in deciding how much time to include in their fee petitions. *Spegon*, 175 F.3d at 552. Billing judgment requires that "[c]ounsel for the [petitioning] party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

---

[1] Bryan Cave, Our People, Christian Mark Poland, http://www.bryancave.com/people/bio.asp?id=4437 (last visited Dec. 21, 2005).

[2] Bryan Cave, Our People, Timothy C. Klenk, http://www.bryancave.com/people/bio.asp?id=4451 (last visited Dec. 21, 2005).

This Court has already determined that only work performed on or after August 25, 2005 will be considered in this petition. At first glance, Petitioners' "Summary of Legal Services Provided By Subject" appears to significantly aid the Court. However, after closer inspection this is not the case. Although Petitioners classified their work into 13 disparate categories, it is not readily apparent into which category each detailed billing entry should be placed. As such, a closer examination into each of the 54 detailed billing entries is necessary.

Petitioners request reimbursement for 132.25 hours, 68.25 hours of work by Klenk and 64.00 hours by Poland. (Pet'rs Mem. at 6.) However, the sum of the time contained in all 54 detailed billing entries submitted is only 104.15 hours, 54.45 hours for Klenk and 49.70 hours for Poland. Of these 54 detailed entries, 38 entries contain a description of more than one task per entry, which is known as "lumping." These 38 "lumped" entries represent 80.15 hours of billing time, 35.15 hours for Klenk and 45 hours for Poland. Because lumping prevents the Court from finding out exactly how much time was spent on a particular task, it also prevents the Court from determining whether that time was reasonably spent. Consequently, other courts have taken the drastic measure of considering lumped entries as non-compensable. *See, e.g., In re Wiedau's, Inc.*, 78 B.R. 904, 908 (Bankr. S.D. Ill. 1987). We will not choose such a drastic measure. However, because lumping pervades so many of the billing entries at issue, this Court cannot accurately determine the reasonableness of the billable hours submissions. Therefore, we accept as compensable all 54 detailed time submissions in Exhibit 1, but reduce the 38 "lumped" entries' total by 50% to achieve a more equitable solution. The net result is 64.075 hours, 36.875 hours for Klenk and 27.2 hours for Poland.

The discrepancy between the number of hours for which Petitioners seek reimbursement and the number of hours contained in the detailed billing records is explained by the fact that Petitioners have not filed with the Court a detailed bill containing the time spent on the petition for fees because it had not yet "been prepared and sent to the client for payment." (Pet'rs Mem. at 7.) This Court fails to understand why a detailed bill could not have been included in Petitioners' Memorandum because a simple subtraction (132.25-104.15) shows that they are requesting reimbursement for 28.1 hours (13.8 hours by Klenk and 14.3 hours by Poland) spent preparing the fee petition. In the absence of detailed billing records for the fee petition preparation, we award 3.0 hours per attorney as nominal compensation, which means Petitioners are entitled to reimbursement of 39.875 hours for Klenk and 30.2 for Poland.

As previously noted, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Thus, having determined the number of hours reasonably expended and reasonable hourly rates, we find that Petitioners are entitled to $27,500 (39.875 hours * $425/hour = $16,946.88 for Klenk; 30.2 hours * $350/hour = $10,570 for Poland; $16,946.88 + $10,570 = $27,516.88). We round $27,516.88 to the nearest hundred dollars, $27,500, "to avoid creating a delusive impression of exactness." *Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988).

The final step in calculating the proper fee award is to determine whether to adjust the $27,500 fee award upward or downward in light of Petitioners' success and the amount of hours expended to attain that success. Where the petitioner achieves an excellent result, "his attorney should recover a fully compensable fee . . . ." *Spegon*, 175 F.3d at 557. In the instant action,

Petitioners have prevailed on their resistance to the document requests. However, their opposition was based on a relatively simple question—whether Judge Duffey's discovery order permitted the issuance of Plaintiffs' subpoenas. Nonetheless, success is success. Therefore, we find that they are entitled to the full $27,500.

## Conclusion

For the reasons set forth above, Petitioners' motion for attorneys' fees is granted in part. Petitioners are awarded attorneys' fees in the amount of $27,500.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** ____JAN 1 8 2006____